## HAMBLETON v. SOUTHWEST TEXAS BAPTIST HOSPITAL et al.
### (No. 5374.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 16, 1914. On Motion for Rehearing, Jan. 20, 1915.)

1. APPEAL AND ERROR (§ 916*)—REVIEW—PRESUMPTIONS.

Where the original answer, which alone set up defendant's plea of privilege, was not in the record, it will be presumed that the plea was properly denied.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3699–3705; Dec. Dig. § 916.*]

2. CONTINUANCE (§ 24*)—RIGHT TO—CUMULATIVE TESTIMONY.

A party's first application for continuance cannot be denied because the evidence of the absent witness was cumulative.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 72; Dec. Dig. § 24.*]

3. CONTINUANCE (§ 47*)—APPLICATION—OPPOSITION.

Testimony that the absent witness had stated that he would not swear to the facts set forth in the first application for continuance was not admissible.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 141; Dec. Dig. § 47.*]

4. TRUSTS (§ 43*)—PAROL EVIDENCE—ADMISSIBILITY.

Where it was sought to ingraft a parol trust on a conveyance of land, evidence of declarations of the deceased grantor is not inadmissible because the witness could neither state the exact language of the grantor, nor give the exact dates.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.*]

5. TRUSTS (§ 43*)—DECLARATIONS—HEARSAY.

The grantor being dead, such evidence was not hearsay.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.*]

6. EVIDENCE (§ 155*) — ADMISSIBILITY — ADMISSION BECAUSE OF ADMISSION OF OTHER EVIDENCE.

Where the question of a parol trust was in issue, one party, having introduced evidence of declaration of the deceased grantor, cannot complain that the other introduced similar evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 444–458, 2148; Dec. Dig. § 155.*]

7. TRUSTS (§ 43*)—ESTABLISHMENT OF TRUST—EVIDENCE—ADMISSIBILITY.

Evidence of the feelings of the grantor to her granddaughters is admissible, where it is sought to establish a parol trust for their benefit upon land conveyed to a daughter.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.*]

8. TRUSTS (§ 44*) — PAROL TRUSTS — ESTABLISHMENT.

While a parol trust may be ingrafted upon a deed, absolute on its face, the evidence must be clear and satisfactory.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66–68; Dec. Dig. § 44.*]

9. TRUSTS (§ 44*)—PAROL TRUSTS—EVIDENCE—INSUFFICIENCY.

Evidence *held* insufficient to establish a parol trust in favor of appellees upon land conveyed to another.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66–68; Dec. Dig. § 44.*]

10. TRUSTS (§ 43*)—EVIDENCE—ADMISSIBILITY.

In a suit to establish a parol trust upon land apparently conveyed absolutely, evidence of declarations of the grantor not made in the grantee's presence is admissible.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.*]

11. TRUSTS (§ 43*) — PAROL TRUSTS — EVIDENCE.

Evidence of the grantor's intention, at a time many years before conveyance of land, is admissible to show that a conveyance absolute on its face was subject to parol trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.*]

12. WITNESSES (§ 248*)—RESPONSIVENESS OF TESTIMONY.

Testimony not responsive to the questions should be excluded.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 861–863; Dec. Dig. § 248.*]

13. TRUSTS (§ 43*) — PAROL TRUSTS — EVIDENCE.

Evidence of what a grantee said she would do with land is not admissible to charge the property with a parol trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.*]

14. TRUSTS (§ 43*) — PAROL TRUSTS — EVIDENCE.

Testimony of the payment of bills of the grantee in New York and Hot Springs is not relevant to claim that the land was subject to a parol trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.*]

---

**15. TRUSTS (§ 43\*) — PAROL TRUSTS — EVIDENCE.**

Evidence of the property of the alleged beneficiaries is inadmissible in a proceeding to establish a parol trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.\*]

**16. TRUSTS (§ 43\*) — PAROL TRUSTS — EVIDENCE.**

While evidence of declarations by the grantor before conveyance is admissible to establish a parol trust, declarations after conveyance should be excluded.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.\*]

**17. TRUSTS (§ 43\*) — PAROL TRUSTS — EVIDENCE.**

Evidence that a grantor had supported the grantee is immaterial in a proceeding to charge the property conveyed with parol trust in favor of other objects of the grantor's bounty.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.\*]

**18. EVIDENCE (§ 471\*)—PAROL TRUSTS—OPINION EVIDENCE.**

In a suit to establish a parol trust, where a medical expert testified as to the feebleness of the grantor after the conveyance, and that the grantee took charge of everything, testimony by another witness that the grantor had control of the property up to the time of her death is inadmissible, being the mere conclusion of the witness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471;\* Witnesses, Cent. Dig. § 835.]

**19. TRUSTS (§ 43\*) — PAROL TRUSTS — EVIDENCE.**

Evidence that the grantor made presents to one of the alleged beneficiaries is inadmissible to establish a parol trust upon a conveyance to another absolute on its face.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.\*]

**20. TRUSTS (§ 43\*)—EVIDENCE TO ESTABLISH —PAROL TRUST.**

Where the father of one of the alleged beneficiaries, who was managing her interests, wrote a letter showing that she asserted no parol trust in her behalf, such letter is admissible to rebut her claim of a trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.\*]

**21. TRIAL (§ 120\*)—ARGUMENT OF COUNSEL.**

It is improper for counsel to claim that a witness made statements which he did not in fact make.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 285–287; Dec. Dig. § 120.\*]

**22. TRIAL (§ 25\*)—RIGHT TO OPEN AND CLOSE.**

The burden of proof is upon one seeking to establish a parol trust upon land conveyed by deed, absolute on its face, so that such party was entitled to open and close.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 44–75; Dec. Dig. § 25.\*]

On Motion for Rehearing.

**23. TRUSTS (§ 43\*)—PAROL TRUSTS—ESTABLISHMENT.**

Whether a conveyance was incumbered by a parol trust depends upon the intention of the grantor at the time of the conveyance.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.\*]

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by the Southwest Texas Baptist Hospital against Imogene T. Hambleton and others. From a judgment for plaintiff the defendant named appeals. Affirmed in part and reversed and remanded in part.

Moody & Boyles, of Houston, for appellant. W. W. King, of San Antonio, for appellees.

FLY, C. J. This suit was instituted by the Southwest Texas Baptist Hospital, which will hereinafter be designated as the Hospital, against Dorothea Dignowity and Hallie B. Dignowity, to remove cloud from the title to a block of land in the city of San Antonio which the Hospital had purchased from appellant. It was alleged that appellant derived her title to the land from her mother, Amanda J. Dignowity. The two Dignowitys, defendants in the court below and the real appellees in this court, although the Hospital is joined with them as an appellee, answered that the Hospital had acquired the property in controversy by warranty deed from appellant on March 28, 1913, and had agreed to pay therefor the sum of $37,500, of which $10,000 was in cash, and for the balance five promissory notes in the sums of $5,500 each, due respectively in one, two, three, four and five years, were executed by the Hospital; that appellant acquired title to the property by deeds from her mother, Amanda J. Dignowity; that at the time the deeds were executed it was agreed by and between appellant and her mother that appellant should hold three corner lots out of said block for the defendants, herein designated appellees, and Helen I. Hambleton; that on December 26, 1898, Amanda J. Dignowity executed and acknowledged four deeds, one to each of her granddaughters, appellees being two of them, conveying the four corner lots of the block to them; that, with the exception of the one to Florence J. Sullivan, neither of the deeds was ever delivered; that on January 16, 1907, the deed to Florence was delivered, and on the same day Amanda J. Dignowity executed a deed to appellant conveying to her all of the block, except that part conveyed to Florence; that the deed was made in trust to appellant, so far as the three lots belonging to appellees and Helen I. Beavens were concerned, and the power to sell the same was given to appellant, the proceeds from the sale to be paid to the owners of the same, and that the trust was accepted by her for a long time after the death of her mother, and she accounted to said Florence J. Sullivan, formerly Dignowity, and Helen I. Beavens, formerly Hambleton, for their interest in the trust property, but refused to recognize the trust in favor of appellees; that the Hospital had notice of the trust when it bought the property; that the interest of each of the appellees was of the value of $6,000. It was alleged that appellant had no property except the vendor lien notes, and appellees prayed that a writ of

injunction be issued to require the notes to be deposited in the registry of the court, and that they have judgment for $6,000 each, and the same be made a lien on the property in controversy.

[1] Appellant filed a plea of privilege to be sued in Harris county, which was overruled before the amended answer was filed. The original answer upon which appellant was brought into court does not appear in the record, and we do not, of course, know what it contained. Its allegations may have been sufficient to justify the action of the court in overruling the plea of privilege. The plea of privilege was filed on October 7, 1913, was overruled on November 10, 1913, and the second amended answer, the only one contained in the record, was filed on March 3, 1914. The plea of privilege was never renewed after it was overruled. The answer upon which appellant was made a party may have stated matters which made it proper to sue appellant in Bexar county. There was no allegation of fraud in any of the allegations in order to secure venue in that county. We must presume that the court was justified by the allegations of the answer in overruling the plea of privilege.

[2, 3] The second assignment of error is sustained. The application for continuance was the first and should have been granted. The fact that the evidence of the absent witness may have been cumulative should not have been considered. The testimony of the absent witness may have produced a better impression upon the jury than that of the other witnesses. The statute does not contemplate the refusal of the first application for a continuance because there are others who will swear to the same facts as would the absent witness, for it provided:

"That on a first application for continuance, it shall not be necessary to show that the absent testimony cannot be procured from any other source."

The application for a continuance was in strict compliance with the statutes, and should have been granted. The testimony that the absent witness had told one of the appellees that he would not swear to the facts stated in the application should not have been admitted. We cannot say that the evidence of the witness might not have produced a different result.

[4-6] The court did not err in refusing to strike out the testimony of Mrs. Purkiss concerning statements made to her by Mrs. Amanda J. Dignowity. The fact that she could not fix the dates on which the statements were made merely went to the weight of the testimony, and not its competency. The witness stated the substance of the statements, without pretending to state the exact language, and that was not a valid objection to her testimony. The evidence was not hearsay; Mrs. Dignowity being dead. Smith v. McElyea, 68 Tex. 70, 3 S. W. 258. The declarations were made before the deed to appellant was executed. The witness fixed the time of one conversation a few days before the death of Mrs. Dignowity, and before she executed the deed. Appellant introduced statements made by Mrs. Dignowity, and cannot object to proof of statements by appellees. Smith v. McElyea, herein cited.

[7, 8] The court did not err in permitting testimony as to how Mrs. Dignowity felt towards her granddaughters. It was a circumstance that with others might tend to show that she did not intend to give all the property to her daughter. It is the established rule in Texas that a parol trust may be ingrafted upon a deed absolute upon its face. But it is also the rule, wherever such practice is permitted, that the evidence establishing such trust must be clear and satisfactory. Mead v. Randolph, 8 Tex. 191; Hall v. Layton, 16 Tex. 278; Markham v. Carothers, 47 Tex. 28; Agricultural Association v. Brewster, 51 Tex. 262; King v. Gilleland, 60 Tex. 271; Neyland v. Bendy, 69 Tex. 713, 7 S. W. 497; Goodrich v. Hicks, 19 Tex. Civ. App. 528, 48 S. W. 798; Kelly v. Short, 75 S. W. 877; Western Assur. Co. v. Hillyer-Deutsch-Jarratt Co., 167 S. W. 816.

[9] The testimony offered by appellees was all circumstantial, such as the execution of deeds to them by Mrs. Amanda J. Dignowity, her declarations, most of them some time before the deed to appellant was executed, and the feelings of their grandmother toward them. The only direct testimony as to what occurred at the time the deed was executed was offered by appellant, which tended to show that there was no trust ingrafted on the deeds by the grantor. Mrs. Florence J. Sullivan, a granddaughter of the grantor, swore that the latter said at the time the land was conveyed to appellant: "Florence, I give you this with my love and affection. The other is for Emma." She further swore that her grandmother said "she wanted the corner lot for me and the rest of the property for Mrs. Hambleton." The witness stated that at the time the deeds to appellant were executed the grantor destroyed the deeds to appellees, which had been executed by her a long time before, and which had never been delivered. Mrs. Sullivan swore positively that Mrs. Amanda J. Dignowity said nothing about a part of the property being held in trust for appellees. Those present at the time of the execution of the deeds, and also at the time they were acknowledged, were Ed. Dignowity, A. G. McNeill, and Mrs. Sullivan. Mrs. Hambleton was only present when the acknowledgments were taken. McNeill, in so far as he remembered the facts, corroborated Mrs. Sullivan. The evidence clearly showed that at one time Mrs. Amanda Dignowity desired to give the four corner lots to her granddaughters, one lot to each of them, and she executed deeds to that effect, but delivered none but the one to Mrs. Sullivan. The facts offered

by appellant indicated that she changed her mind and concluded to give the property to her daughter, Mrs. Hambleton.

Parol trusts are allowed to be ingrafted on deeds absolute on their faces, in order to protect those entitled to an estate from the cupidity and dishonesty of trustees; yet, while it is permitted, the law recognizes the danger that lurks in such practice, and requires a higher degree of evidence than in ordinary cases. As said by the Supreme Court in King v. Gilleland, herein cited:

"Perhaps there is no fact which, in the trial of civil causes, is required to be so satisfactorily proved as that which ingrafts a parol trust upon the legal title. * * * Whilst it is not necessary that it should be established beyond a reasonable doubt, nothing must be left to conjecture, nor must presumptions be indulged which are not the usual and almost necessary deductions from the facts proved."

That rule is firmly established in Texas. The testimony in this case, while showing that Mrs. Amanda J. Dignowity at one time contemplated giving appellees a portion of the land, does not clearly and satisfactorily show that she had such intention at the time of executing the deeds to appellant, but the only evidence offered of her intention at that time tended to show that she wanted her daughter to have all of the land, except the portion she conveyed to Mrs. Sullivan.

It was shown without contradiction that at the time of the execution of the deeds to appellant Mrs. Amanda J. Dignowity handed one of the four deeds she had executed to her four granddaughters to Mrs. Sullivan, and then placed those to appellees in the fire. Why should she provide for one by a deed and then ingraft a parol trust on an absolute deed to her daughter? She had the deeds to appellees already executed, and it does not seem reasonable, if she wanted them to have a part of the land, that she would destroy the deeds and open a field for strife among her children by leaving nothing in writing to indicate her wishes. It seems incredible that she should have employed an attorney to prepare the deeds and never let him know there was a secret trust in favor of her granddaughters. The facts and circumstances seem to indicate a desire on her part to give her daughter and granddaughter, who were with her, the whole of the land. We do not feel disposed, however, to render judgment, but give appellees an opportunity to strengthen their case if they can.

[10] The eleventh, twelfth, and thirteenth assignments of error complain of the admission of testimony as to what Mrs. Amanda J. Dignowity stated in 1896 and 1897. The objections urged against the testimony are not tenable. Davis v. Davis, 44 Tex. Civ. App. 238, 98 S. W. 198. Appellees were not claiming as heirs, but as beneficiaries in a trust created by Mrs. Amanda Dignowity. There is no merit in the objection to the testimony that the statements of the grantor were made when appellant was not present, and they

172 S.W.—37

were admissible. The cases cited by appellant are not in point.

[11] While there is very little weight to be given to testimony showing that Mrs. Amanda Dignowity stated many years before her death that she wanted her property divided in a certain way and produced a little sketch showing such division, still it was admissible to show that she so intended dividing her property for many years. No matter, however, what her intention may have been at that distant period, it can have no probative force, unless it be shown that she had such intention and expressed it at the time she conveyed the land to her daughter. Such intention must have entered into and have become a part of the deed of conveyance. That she had changed her mind at one time is apparent from the fact that she, on February 23, 1903, four years before her death, made a will in which she devised the entire property to appellant, and required the payment of $1,000 to each of the appellees, and afterwards destroyed the deed to appellees, and conveyed the property to her daughter. As said in the Ohio case of Russell v. Bruer, 64 Ohio St. 1, 59 N. E. 740:

"There is in the record an utter absence of any allegations or proof of any act or declaration by Mrs. Johnson, contemporaneous with the deeds, clearly and unqualifiedly creating such a trust, and defining its terms and conditions."

[12, 13] We sustain the sixteenth assignment of error. The evidence of James V. Dignowity in regard to the statements of appellant was not responsive to the questions asked him, and his testimony should have been excluded. He was asked as to what appellant had said about the disposition of the property made by Mrs. Amanda J. Dignowity, and he answered as to statements made by appellant as to what she would do with the property.

The evidence objected to through the seventeenth assignment of error was not relevant to the issues in the case. What appellant said as to what she would do with the property did not tend to show that a parol trust existed. The existence of a parol trust depends on what was said and done by Mrs. Amanda Dignowity at the time of the execution and delivery of the deeds to appellant. Pitts v. Weakley, 155 Mo. 109, 55 S. W. 1055.

[14] What the payment of the bills of appellant in New York and Hot Springs had to do with the issue in this case does not appear, unless it was to create a prejudice against appellant in the minds of the jury. It certainly did not in any way tend to show the existence of a trust in favor of appellees.

[15] The twenty-second, twenty-third, twenty-fourth, and twenty-fifth assignments of error are sustained. The poverty of appellees could not cast any light on the issue as to whether a trust was ingrafted on appellant's title to the land.

[16] The testimony of J. F. Hines as to

statements made by Mrs. Amanda Dignowity before the deeds to appellant were executed would be permissible, but no statements made by her after she had conveyed the land should have been admitted. The testimony complained of in the twenty-eighth and twenty-ninth assignments of error was as to statements of Mrs. Amanda Dignowity after the execution of the deeds and was improper, and we sustain those assignments. Appellees cite Smith v. McElyea, 68 Tex. 70, 3 S. W. 258, as authority for permitting statements of a grantor affecting the title to land after the execution of the deed, but the decision is authority for exactly the opposite doctrine. The court said:

"The rights of the parties were fixed when the deed was made to the trustee, and the general rule, which rejects declarations made by a grantor after he has parted with title, when introduced for the purpose of affecting the title or right fixed by the deed, must have application in this case."

That such testimony was admitted in that case by the trial judge, was the only ground upon which the judgment was reversed. The other decisions cited by appellees are to the same effect. As said in Wilson v. Simpson, 80 Tex. 279, 16 S. W. 40:

"The declarations of John Payne in disparagement of appellants' title would have been clearly inadmissible under well-recognized rules if they had been made after the title had passed from him."

When the deeds were delivered to appellant by her mother, the possession of the property passed to her. The deed went into effect upon its delivery. Mrs. Amanda Dignowity was sick and very feeble for 30 days before she died, and Dr. Hines swore that appellant was "looking after" the property. He said.

"Between the 16th of January (the date of the deed to Mrs. Hambleton) and the time when Mrs. Dignowity made the statement to me, I think Mrs. Hambleton was controlling the place between those dates; she was supervising, managing the cooking, attending to the servants, and everything." De Garca v. Galvan, 55 Tex. 53.

[17] The deeds made by Mrs. Amanda J. Dignowity to appellant in 1879, conveying to her land different from that in controversy, and the testimony of F. Dignowity about the land, should not have been admitted in evidence. The evidence did not tend to show that a trust was ingrafted upon the title to appellant. Neither did the fact that appellant and Mrs. Sullivan had been supported by Mrs. Amanda J. Dignowity have any materiality, except perhaps to show that they had nothing, which might cause the mother and grandmother to give them some property. Appellant, a widow, had no one upon whom she could rely for a support, while appellees had fathers or husbands to whom they could look for support and maintenance. The evidence did not tend to show a trust, but merely showed the great affection Mrs. Amanda Dignowity had for her daughter and granddaughter.

The thirty-third and thirty-fourth assignments are overruled.

[18] The evidence of H. L. Dignowity to the effect that his mother had control of the property up to the time of her death was merely a conclusion of the witness, and one without any facts upon which to base it. Dr. Hines swore that for 30 days before her death Mrs. Dignowity was helpless, and it was an absurd conclusion that she was controlling the property. The thirty-seventh and thirty-eighth assignments of error are sustained, as well as assignment 38½. The last is sustained because the evidence as to the plat was not shown to be the best evidence obtainable.

The thirty-ninth and fortieth assignments of error are overruled.

[19] We fail to see the pertinency of the testimony of Hallie B. Dignowity as to various presents given her by her grandmother. It did not tend to prove the trust.

The forty-second assignment of error is overruled.

[20] The letter written by Charles Dignowity to appellant should have been admitted in rebuttal of his testimony on the trial. The letter tended to show that at the time it was written his daughter, Dorothea, was not claiming any of the land. Charles Dignowity was the father of Dorothea, who was a minor, and acted for her in regard to the claim.

The forty-fourth assignment of error is sustained. The plat offered in evidence was not shown by competent testimony to have been in the hands of Mrs. Amanda Dignowity. What Mr. Guinn may have said about the plat to Hallie B. Dignowity was hearsay, and should have been excluded.

[21] The forty-fifth assignment of error is sustained. The bank checks given by Charles Dignowity to appellant did not tend to prove the existence of a trust.

The forty-ninth assignment of error is overruled, but the fiftieth, fifty-first, fifty-second and fifty-third assignments are sustained. Counsel should not have been permitted to claim that certain statements had been made by a witness, which he had not made.

[22] The burden was upon appellees to establish the trust, and the court did not err in permitting the opening and closing arguments to be made by counsel for appellees.

Whatever may have been the intentions of Mrs. Amanda J. Dignowity at times previous to the execution of the deeds to appellant, the evidence does not satisfactorily show to this court that she conveyed the land in trust to appellant. She had executed a will prior to that time, and by its terms Mrs. Dignowity showed that she did not intend that appellees should have any of her land. The evidence of that will and the terms of the deed speak with much greater force than

the frail memories of witnesses, a number of whom were not disinterested. If Mrs. Amanda Dignowity desired to give a lot each to appellees, it is very strange that she should have destroyed the deeds conveying a lot to each, and charged her absolute deed with a parol trust. She did not destroy the deed to Florence Sullivan, but delivered it to her, and why should she have done this and have resorted to a parol trust to give appellees a lot each? Her conduct in giving the deed to Florence, in destroying the other deeds, and executing absolute deeds to appellant tended strongly to show that she had changer her mind as to giving appellees any land, as she had before that shown by her will, and had concluded to give her daughter all the land except that given to Mrs. Sullivan.

That part of the judgment removing cloud from the title of the Southwest Texas Baptist Hospital will be affirmed, but in all other respects the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

[23] We desire to modify our former opinion as to requiring that proof of a trust could only be shown by what Mrs. Amanda J. Dignowity said at the very time of execution and delivery of the deeds, but hold that the intention of Mrs. Dignowity to provide for such a trust must be clearly and satisfactorily shown to have existed at the very time of execution and delivery of the deeds. No matter what her intention may have been prior to that time, unless it then existed, the trust was not created. Instructions as to a verdict being instructed by the lower court upon another trial, and other expressions as to the evidence, are withdrawn.

The motion for rehearing is overruled, with the exception of allowing the modifications referred to.