## MURRAH v. SHIRLEY. (No. 8749.)

(Court of Civil Appeals of Texas. Dallas. Jan. 7, 1922.)

1. Brokers ⬅️76—Broker held to hold purchase money as stakeholder, and to become trustee thereof on failure of abstract to show good title.

A broker, receiving deposit from purchaser, to be returned on failure to show good title of abstract, holds as stakeholder, and after such failure holds funds as trustee, and the fact that he was the agent of the vendor does not affect the trust relation, and equity will not permit his retention thereof.

2. Injunction ⬅️133—Preliminary mandatory writ, requiring deposit of trust fund in court, may be made to prevent loss where right thereto seems certain.

In cases of unusual extremity, where the evidence presents a clear right, which seems to be accentuated by the testimony of the party against whom the remedy is sought, and complainant whose right seems certain is threatened with permanent loss, a preliminary mandatory injunction may be granted to the extent of requiring plaintiff's purchase money held in trust by broker after failure of transaction to be put in the custody of the court pending final hearing.

Appeal from Dallas County Court, at Law; Frank G. Harmon, Judge.

Suit by G. E. Shirley against W. W. Murrah, and from a decree granting a temporary mandatory injunction the defendant appeals. Reformed and affirmed.

C. K. Bullard, of Dallas, for appellant.
Flippin & Miller, of Dallas, and Ralph Randolph, of Wichita Falls, for appellee.

HAMILTON, J. This is an appeal from a decree of the county court of Dallas county granting a temporary mandatory injunction.

Appellee, Shirley, alleged that on May 11, 1921, appellant, Murrah, was engaged in the real estate business in Dallas, and that as a real estate agent he made a contract of sale for Mrs. Janie J. Dillard, by the terms of which Mrs. Dillard agreed to convey to appellee a certain described lot in the city of Dallas, appellee agreeing to pay therefor a consideration totaling $3,200. It was alleged that the contract, which was in writing, was conditioned upon an authentic abstract showing a good title to the property, and that in event the title should not be good and could not be made good within a reasonable time, not to exceed 30 days from the date of the contract, then the seller, Mrs. Janie J. Dillard, and appellant, Murrah, obligated themselves to return to appellee $320, deposited by him with Murrah at the time of the signing of the contract. Appellee alleged that in reliance upon this provision of the agreement he delivered his check, payable to the order of W. W. Murrah & Co., or bearer, in the sum of $320; it being mutually understood that Murrah should hold the check pending the final termination of the transaction, and that, instead of keeping the check in his possession against such event, Murrah cashed it on the day it was executed and delivered. It was alleged by appellee that when the abstract was delivered to him he promptly submitted it to his attorney, who rendered to him an opinion concerning it, which contained certain objections, and in which such attorney advised him that the title reflected by the abstract was not good; that this opinion was submitted to Mrs. Dillard and to appellant, Murrah, and that, although efforts were made to remove the objections, which were material, yet they were not removed, and that a good and merchantable title to the property had never been tendered to the appellee, who had been ready, able, and willing to accept it during the last five preceding months. The allegation was made that under the agreement Murrah had no title or interest in the money deposited with him, and upon information and belief it was alleged that he was using, or had used, the money for his own benefit, so as in practical effect to embezzle it. It was alleged that neither Murrah nor Mrs. Dillard had any property subject to execution, for which reason no judgment for the recovery of the money could be enforced; that Murrah received the money only as a stakeholder, and had no right to its possession in any other relation to it, and that, if he made any claim to a right, a title, or an interest in it, then he ought to be required to pay it into the registry of the court, or into some other depository, where it should be retained pending the determination of such claim. The further allegation was made that, while Murrah was the agent of Mrs. Dillard in the transaction, which rendered her responsible to appellee, Shirley, for the return of the money to him by Murrah, yet that Mrs. Dillard made no claim to the money, and had requested Murrah to return it to appellee. There was a prayer for judgment against both Murrah and Mrs. Dillard for $320, and for a temporary injunction against Murrah, enjoining him from using the money during the pendency of the suit, and mandatorily requiring him to pay it to

the appellee or into the registry of the court or some other depository pending the final disposition of the case. The petition was verified by the affidavit of appellee. Appellant answered by general demurrer and general denial.

Upon a hearing of the application for an injunction the court found the facts to be as alleged by appellee, and granted an order, requiring payment of the money into the registry of the court upon the appellee's filing "a good and sufficient bond in the sum of $500, in favor of the defendant herein, W. W. Murrah, conditioned as required by law," and directed that the money then be paid to Shirley upon his delivering to the clerk of the court his receipt for it.

The verified petition and the evidence, exhaustively adduced, upon the hearing, present a most extraordinary appeal for equitable relief by means of the harsh remedy invoked. The written agreement under which appellant acquired appellee's check by means of which he took from the latter's bank account the funds in controversy is as follows:

"Dallas County, Texas, May 11, 1921. Received of G. E. Shirley the sum of three hundred twenty and No/100 ($320.00) dollars in part payment for one certain lot with all improvements thereon and being locally known as 1711 Caddo street and being a lot 50x128 feet, more or less, in block 600/2 according to the Official Map Records of the City of Dallas, Texas. A more legal description of same to be placed in deed, this day sold said G. E. Shirley by W. W. Murrah & Company as agent of Mrs. Janie J. Dillard, a widow, for the purchase price of three thousand two hundred and No/100 ($3,200.00) dollars upon the following terms, viz.: One thousand eight hundred and No/100 ($1,800.00) dollars, six hundred and No/100 ($600.00) dollars to be represented by one auto taken in trade cash and the balance in three notes, as follows: The assumption and agreement to pay a series of two (2) notes as follows: One note in the sum of four hundred and No/100 ($400.00) dollars due and payable April 14, 1922, interest at eight per cent. payable semiannually, and one note in the sum of four hundred and No/100 ($400.00) dollars due and payable April 14, 1923, interest at eight per cent. payable semiannually.' The execution and agreement to pay one note in the sum of six, hundred and No/100 ($600.00) dollars with interest at eight per cent., payable one hundred and No/100 ($100.00) dollars per month and interest, on unpaid balance as it accrues, each bearing interest at the rate of eight per cent. per annum from date of deed, the interest payable as above specified as it accrues, secured by vendor's lien and deed of trust, conditioned upon an authentic abstract showing a good title to the property, and should the title to said property prove not good and cannot be made good within a reasonable time, not to exceed thirty days from the date hereof, then we obligate ourselves to return said three hundred twenty and No/100 ($320.00) dollars now paid upon the return and cancellation of this receipt. Balance of cash payment to be made and notes and deed of trust to be executed at once, when general warranty deed is presented properly conveying the hereinbefore described property.

"All taxes, interest and insurance to be prorated to date of transfer of deed. Said automobile being exchanged as a part of the cash consideration of this sale, is a Dixie make, 1918 model, serial No. 3207, license No. 124920, and is to be delivered, at consummation of this sale, in the same good condition as it was shown to be on this date. The storage battery of said car is to be fully recharged and in first-class working order, when delivered at consummation of this sale."

The evidence heard by the court conclusively established these facts: That appellee submitted the abstract to his attorney for examination. That objections were made to it which, whether or not absolutely sound, were not frivolous. That the defects in the title were such that a title policy could not be obtained by appellee. That the objections were submitted to Mrs. Dillard and appellant, her agent. That the time within which to consummate the contract was extended to July 15, 1921, by the terms of still another written contract prepared by Murrah and signed by Shirley at his request in order that more time might be allowed within which to cure the indicated defects of title. That both Murrah and Mrs. Dillard's attorney attempted to remove the objectionable features, which they could not do. That after it was found that the objections could not be met, appellant, on August 29, 1921, requested the return of his money which appellant refused to pay, notwithstanding the fact that appellant disclosed no valid reason for retaining it and proffered not the slightest evidence upon the hearing which tended to excuse or justify his actions. The only reason given at the hearing by appellant in his testimony for declining to return the money to appellee, at the latter's request and upon the written request of Mrs. Dillard, was that he claimed Mrs. Dillard owned him $160 as a commission for making the sale of her property. He testified that Shirley had not agreed to pay him any commission; that he (copying from the agreed statement of facts) "does not know that Mr. Shirley conspired with Mrs. Janie Dillard or did anything else to break up the sale, but that he thinks he has a witness or two whom he believes will swear that the plaintiff and defendant, Mrs. Janie J. Dillard, colluded together to beat him out of his commission, and for this reason he was holding the money and refused to return to Mr. Shirley the same or any part thereof." He swore that he had the money in a private box at his bank.

The petition, which was verified, asserts, as above stated, that appellee is informed that appellant has no property subject to execution from which the amount of the mon-

ey held by him could be realized under execution. This is not denied in appellant's evidence, nor in any way specifically adverted to in his behalf, either by pleading or evidence.

[1] That appellant was a stakeholder, and after the trade failed under the circumstances reflected in the record held the fund deposited with him as a trustee, is established by the evidence. The fact that he was Mrs. Dillard's agent in the transaction resulting in the fund being put into his hands does not affect the trust relation. Sound authority with uniformity has placed this proposition beyond the requirement of discussion in court decisions. Mechem on Agency, §§ 1444–1445; Williston on Contracts, vol. 1, § 348. Under such circumstances as presented in this case equity will never countenance any claim to the trust fund by the trustee against the equitable right of the beneficiary in it. Neyland v. Bendy, 69 Tex. 711, 7 S. W. 497.

[2] Appellant's counsel ably argues, and supports the argument with numerous decisions, that a mandatory preliminary injunction generally is considered improper, because the usual purpose of a preliminary injunction merely is to maintain the status quo until the rights are determined upon a final hearing of the merits of the case, and is not to be used to transfer the property from the possession of the party in whose possession the court finds it under the conflicting contentions which the hearing of the merits must determine in order to settle the right and title to whatever is involved. This position, of course, is thoroughly sound, and we readily subscribe to it. It is but another way of stating that a man shall have his day in court before his rights are adjudicated. But that courts are clothed with jurisdiction in cases of the utmost urgency to issue preliminary mandatory injunctions is not to be doubted. In cases of unusual extremity, where the evidence presents a clear right, which, as here, seems to be accentuated by the very testimony of the party against whom the remedy is sought, and in whose behalf no extenuation is offered for the plainly established wrongful conversion of a particular trust fund committed by him, and the loss of which to the complainant, whose right seems clear and certain, is threatened, the mandatory order will be granted to the extent of requiring the particular fund to be put in the court's custody pending the final hearing. Fargo v. Rider, 36 S. W. 340; 22 Cyc. 743. The effect of the order is only to secure and control the subject-matter of the controversy until a final adjudication; and the order is made only after a thorough hearing of the respective contentions has justified the conclusion that in all probability, if not certainly, appellee's position will be sustained upon a final hearing, and also that except for such order a final judgment in his behalf would be fruitless because of appellant's dissipation of or other wrongful disposition of the fund. The effect of such order is not, as appellant contends it is, to grant appellee all the relief he could obtain upon a final hearing. The effect is only to take charge of and preserve what clearly appears to be a trust fund pending the final hearing.

We disapprove of that part of the judgment of the trial court which directs payment of the $320 to appellee after it is paid into the registry of the court by appellant as required. Accordingly we reform the judgment so as to eliminate the requirement that the money be paid to appellee, and we affirm it as thus reformed.